RECEIVED
AUG 1 2 2005
ROBERT H. ... LL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 04-60067 |
| VERSUS | * | JUDGE DOHERTY |
| TERRENCE BENOIT | * | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO REMOVE COURT-APPOINTED COUNSEL

Before the court are two letters from defendant Terrence Benoit, dated July 8, 2005 and July 14, 2005, addressed to the district judge in the above-captioned matter, in which Mr. Benoit states that he is dissatisfied with the performance of his court-appointed counsel, Wayne Blanchard.[1] Construing these letters as a motion to remove Mr. Blanchard as court-appointed counsel, and at the request of the district judge, the undersigned conducted a hearing on the motion on August 2, 2005. Participating in the hearing were Mr. Benoit, testifying on behalf of himself, Mr. Blanchard, and counsel for the government, Luke Walker.

### *The Testimony*

Mr. Benoit testified that his chief complaints against Mr. Blanchard are the following: (1) lack of communication; (2) a phone call in which Mr. Blanchard was "abrupt" and "arrogant;" (3) duplication of documents relating to the case that were sent by Mr. Blanchard; (4) a statement by Mr. Blanchard that allegedly shows bias on his part; and (5) Mr. Blanchard's

---

[1] The July 8, 2005 and July 14, 2005 letters are attached as Exhibits A and B to the order setting the motion to remove for hearing. See Rec. Doc. 40. In addition to these letters, Mr. Blanchard offered into evidence a letter dated June 9, 2005 from Benoit to himself. See Defendant's Exhibit No. 1, attached hereto.

request to attend a pre-trial conference by telephone rather than in person. With respect to these complaints, the following testimony was given at the hearing:

### *Lack of Communication and "Abrupt" and "Arrogant" Phone Call*

It is undisputed that Mr. Blanchard met with Mr. Benoit for more than an hour on March 19, 2005 to discuss his case. Mr. Benoit complains that he has not had much contact with Mr. Blanchard since that time, although he acknowledged that he has spoken with Mr. Blanchard on the telephone several times since then. Mr. Benoit testified that he estimates that he has left between ten (10) and twenty (20) phone messages for Mr. Benoit that have not been returned. Nevertheless, Mr. Benoit testified that, on one occasion, Mr. Blanchard accepted a phone call from him and was very "arrogant" and "abrupt" during the call. Mr. Benoit could not recall the exact date of this telephone conversation or the nature of the phone call.

Mr. Blanchard testified that he estimates he has spoken on the telephone with Mr. Benoit about this case at least ten (10) times, but he acknowledged that he has not had any additional personal meetings with Mr. Benoit since the March 19, 2005 meeting. Mr. Blanchard further stated that he *does* remember a telephone conversation with Mr. Benoit in which he became agitated and was "probably abrupt" with Mr. Benoit. Although he could not remember the precise nature of the phone call, he testified that Mr. Benoit calls his office on an extremely frequent basis, usually with complaints about the conditions of his confinement at the St. Martin Parish Correctional Center. Mr. Blanchard testified that he and his staff have informed Mr. Benoit on numerous occasions that he has not been appointed to represent Mr. Benoit on any claims related to the conditions of his confinement, and he guessed that his abruptness with Mr. Benoit during the phone call in question was related to that issue.

### *Duplicative Documents*

Mr. Benoit also complains that several documents that were first provided to him by Mr. Blanchard in connection with his case were duplicated in a second set of documents that were provided to him by Mr. Blanchard at a later date. In a pleading styled "Response to Defendant's Request for Discovery," Mr. Blanchard stated that on January 28, 2005, his paralegal forwarded to Mr. Benoit 65 pages of documents that were received from Luke Walker and F.B.I. Special Agent Greg Harbourt, and that on February 11, 2005, he forwarded to Mr. Benoit an additional 99 pages of documents that he received from Mr. Walker.[2] Mr. Benoit does not dispute that he received these documents, but complains that several documents sent in the first group were duplicated in the second group. Mr. Benoit also complains that he requested but never received transcripts of the grand jury proceedings related to his case.

Mr. Blanchard testified that he received two sets of documents from the government and forwarded both sets to Mr. Benoit in their entirety, without weeding through the second batch of documents to determine if any documents were being produced twice. Mr. Walker confirmed that he produced documents to Mr. Blanchard in two batches, and that, in the second batch, there were no doubt duplicate copies of some of the documents produced in the first batch.

Finally, both Mr. Blanchard and Mr. Walker testified that the grand jury transcripts are not discoverable in this case, and Mr. Blanchard testified that he had explained this to Mr. Benoit on a previous occasion.

---

[2] See "Response to Defendant's Request for Discovery," Rec. Doc. 35.

### *Alleged Bias*

When asked whether he has any direct evidence that Mr. Blanchard has bias against him, Mr. Benoit stated that, during a telephone conference, Mr. Blanchard referred to David Lamparez as Mr. Benoit's "lover," and further stated that Lamparez had stated that Mr. Benoit took certain pornographic pictures of minors. Davis Lamparez is expected to be a witness at trial and was described as the individual who discovered the pornographic pictures that Mr. Benoit is charged with producing in this case and informing the police that Mr. Benoit had them in his possession. Mr. Benoit argued that Mr. Blanchard's statement shows bias, in that it pre-supposes that Mr. Blanchard believes that Lamparez is Mr. Benoit's lover, which Benoit disputes, and that Mr. Blanchard believes that Benoit produced the pictures at issue, a key part of the government's case against Benoit. However, Mr. Blanchard testified that this conversation, in which he may have referred to Lamparez as Mr. Benoit's "lover," was made in the context of discussing the case in general, that is, the expected testimony of witnesses and his legal strategy for defending Benoit at trial. Mr. Blanchard testified emphatically that he has no bias against Mr. Benoit.

### *Pre-Trial Conference*

Mr. Benoit complains that on July 15, 2005, Mr. Blanchard wrote a letter to the district judge, requesting that he be permitted to attend the pre-trial conference in this case by telephone, as he was scheduled to be in Ft. Polk, Louisiana handling the military docket on that date.[3] This request prompted the July 14, 2005 letter from Mr. Benoit to the district judge, citing Mr. Blanchard's request to participate by telephone as "another typical example of [Mr. Blanchard's]

---

[3] See Rec. Doc. 37.

lack of representation in my case." Mr. Benoit also expressed concern that he had not been advised by Mr. Blanchard whether he would be required to be present at the pre-trial conference.

At the hearing, Mr. Blanchard and Mr. Walker both testified that, like the other judges in this district, Judge Doherty frequently permits criminal pre-trial conferences to be conducted by telephone, particularly when counsel has so requested because of a professional conflict. Mr. Walker testified that he had expressed no objection to the pre-trial conference proceeding by telephone. The undersigned also noted for the record that she handles pre-trial conferences for other judges in this district, and that they are "routinely" handled by telephone. The undersigned also stated that defendants do not typically participate in these conferences.

### *Benoit's Reaffirmation of Willingness to be Represented by Mr. Blanchard*

At the conclusion of the hearing, Mr. Benoit stated that, although he feels that he has not had sufficient contact with Mr. Blanchard, he believes that he can work with Mr. Blanchard in the future and generally stated his desire to have Mr. Blanchard continue representing him in this case.

### *Law and Analysis*

It is well settled that the right of an accused to counsel of his choice is not absolute. United States v. Magee, 741 F.2d 93, 95 (5th Cir. 1984); United States v. Brown, 591 F.2d 307, 310 (5th Cir. 1979); United States v. Richardson, 894 F.2d 492, 496 (1st Cir. 1990); United States v. Machor, 879 F.2d 945, 952 (1st Cir.1989). Thus, a defendant may not demand a different appointed lawyer except for good cause. Fletcher v. Baker, 2001 WL 1597805, *4 (N.D.Tex. 2001), citing Morris v. Slappy, 461 U.S. 1 (1983). In United States v. Panzardi-Alvarez, 816 F.2d 813 (1st Cir. 1987), the court noted:

> A criminal defendant's exercise of this right cannot unduly hinder the fair, efficient and orderly administration of justice. An accused's right to choose his own counsel cannot be manipulated to delay proceedings or hamper the prosecution. *When a defendant attempts to substitute counsel at the eleventh hour or in mid-trial, he must show good cause such as a conflict of interest, a breakdown in communication or an irreconcilable dispute with his attorney.*

See also Fletcher, 2001 WL 1597805 at *4 ("The substitution of new appointed counsel is warranted only if the defendant makes a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict"), citing Brown v. Craven, 424 F.2d 1166 (9th Cir. 1970). Thus, a trial court has discretion to limit the exercise of the defendant's right to choose his counsel, and, in doing so, should balance "the defendant's interest in retaining counsel of his choice against the public's interest in the prompt, fair and ethical administration of justice." Panzardi-Alvarez, 816 F.2d at 817.

In the instant case, it is undisputed that there is no conflict of interest on Mr. Blanchard's part that mandates a change of counsel. Furthermore, the testimony given at the hearing on August 2, 2005 establishes that there has been no breakdown in communication or an irreconcilable dispute between client and counsel such that Mr. Blanchard should be removed as counsel. Indeed, Mr. Benoit's complaints seem to focus on a lack of frequent communication but even Mr. Benoit does not feel this should result in a removal of Mr. Blanchard as his counsel. While criminal defendants frequently desire more contact with their attorneys than they receive, the testimony and evidence in this case do not suggest in any way that Mr. Blanchard has been derelict in his duties as counsel for Mr. Benoit. Rather, the evidence shows that Mr. Blanchard met with Mr. Benoit to discuss his case, accepted relatively frequent phone calls from him, and provided him with all of the documents that were produced by the government.

There is also no evidence showing that Mr. Blanchard is biased toward Mr. Benoit in any way. It is clear to the undersigned that the comments that Mr. Blanchard made regarding David Lamparez were made in the context of counsel discussing the case in general, and particularly, his strategy for handling the testimony of a witness who is expected to testify against Mr. Benoit. The undersigned concludes that it is Benoit's *duty* to discuss this expected testimony, and Mr. Blanchard's statements do not indicate bias against his client.

Finally, to the extent that Mr. Blanchard may have been abrupt with Mr. Benoit on one occasion during a telephone call, the undersigned concludes that a single instance of impatience on Mr. Blanchard's part is not representative of the type of "breakdown in communication" that would warrant a substitution of counsel.

Considering the foregoing, and particularly considering that Mr. Benoit ended the hearing by re-affirming his willingness to have Mr. Blanchard continue to represent him, the undersigned concludes that Mr. Benoit fails to show good cause for the removal of Mr. Blanchard as his court-appointed counsel.

### *Conclusion*

Considering the foregoing, **IT IS RECOMMENDED** that Benoit's motion to remove his court-appointed counsel, Wayne Blanchard, be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on August 12th, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 8-12-05
BY CM
TO MEM
RFD\ms